POSTED ON WEB SITE

FILED
MAY 26 2005
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                        )   Case No. 03-60689-B-13
                                             )
Manuel Calvillo and                          )
Kandy Gonzales Calvillo,                     )
                                             )
        Debtors.                             )
_____)
                                             )
Manuel Calvillo and                          )   Adversary Proc. No. 04-1105
Kandy Gonzales Calvillo,                     )
                                             )
        Plaintiffs,                          )
  v.                                         )
                                             )
California Department of Veterans            )
Affairs,                                     )
                                             )
        Defendant.                           )
_____)

**MEMORANDUM DECISION RE MOTION FOR SUMMARY JUDGMENT**

Peter B. Bunting, Esq., appeared on behalf of the debtors Manuel Calvillo and Kandy Gonzales Calvillo ("Debtors").

Karla Broussard-Boyd, Esq., appeared on behalf of the California Department of Veterans Affairs.

In this adversary proceeding, the court is asked to determine whether the California Department of Veterans Affairs (the "Department") effectively cancelled a Cal-Vet Loan contract with debtor, Manuel Calvillo ("Calvillo"), for the purchase of Calvillo's residence.[1]  The Debtors seek declaratory relief that the Cal-Vet Loan has not been cancelled, that Calvillo still holds an equitable interest in the residence, that he has the right to complete performance of the Cal-Vet Loan, and that their confirmed chapter 13 plan (providing for cure of the prepetition arrearages and maintenance of the postpetition payments) is binding on the Department.  The Department counterclaimed

---

[1] This adversary proceeding was originally filed against the United States Department of Veteran Affairs.  The California Department of Veterans Affairs filed an answer to the complaint and subsequently substituted into the adversary proceeding as the real party in interest.

for relief from the automatic stay to have Calvillo evicted from the subject property and now moves for summary judgment. This memorandum contains the court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) (made applicable by Fed.R.Bankr.P. 7052). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 541. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). For the reasons set forth below, the Department's motion for summary judgment will be denied and judgment shall be entered for Calvillo.

**Findings of Fact**

The following facts are based on the record in the case, the parties' stipulated facts, and evidence presented in support of and opposition to this motion for summary judgment. Both parties appear to agree that there are no triable issues as to any material fact. This is a dispute over the interpretation of written documents which can be resolved by summary judgment.

The Department provides funding to help eligible veterans purchase homes and other qualified properties. The Department administers this program under the Veterans' Farm and Home Purchase Act of 1974. The funding is structured through land sale contracts called Cal-Vet Loan contracts under which the Department actually purchases and then resells the properties to the veteran-buyers. The Cal-Vet Loan contracts permit the Department to retain legal title to the subject properties until the contracts are fully performed. If the buyer defaults under a Cal-Vet Loan contract, the Department has the right to cancel the contract, terminate the buyer's interest in the property, and retain as rent the money previously paid to buy the property. The buyer retains an equitable interest in the property until the contract is either completed or cancelled.

On June 24, 1985, Calvillo entered into a Cal-Vet Loan contract (the "Contract") to purchase a house located at 5526 East Illinois Avenue, Fresno, California (the "Residence"). The Contract requires Calvillo to pay the Department $74,500 at the rate of $679 per month. Two provisions in the Contract relating to default and cancellation of the Contract are relevant to this proceeding–paragraphs 16 and 17, which provide in

relevant part:

> ¶ 16. In the event of a failure of Purchaser to comply with any of the terms or conditions of this Contract, Department shall have the right at its option to cancel this Contract, and thereupon shall be released from any and all obligations, at law or in equity, to Purchaser under this Contract, and Purchaser shall forfeit all rights hereunder and all payments theretofore made shall be deemed to be rental paid for occupancy. Upon such forfeiture, Department shall take possession of the property covered by this Contract, . . . .
>
> ¶ 17. *Before exercising the right to cancel this Contract, Department will fix a day upon which it will cancel the same and give written notice to Purchaser of its intention to do so*, and such notice shall be deemed duly given when mailed in any United States Post Office by certified mail, postage prepaid, and addressed to Purchaser at the address of the property under this Contract or such change of address as Purchaser may have filed with Department. *Said notice shall be so mailed at least thirty days before the day fixed for cancellation, and Purchaser shall have the right on any day before the day fixed to comply with and perform the terms of this Contract for which he may be in default, . . . . If full compliance, performance or payment is not so had or made within said time, Department may declare Purchaser in default, and cancel this Contract and enforce its right of forfeiture hereunder.* (Emphasis added).

Calvillo defaulted on the Contract sometime in the year 2000. On October 12, 2000, Calvillo entered into a repayment agreement with the Department to cure the default. On January 30, 2001, the Department notified Calvillo that the repayment agreement was in jeopardy and that the Contract was at risk of cancellation. Calvillo did not make the payments as contemplated in the repayment agreement and the Department decided to commence formal proceedings to cancel the Contract.

On July 29, 2003, the Department mailed a document entitled "Notice of Intent to Cancel Contract" (the "Notice") to Calvillo by certified mail. The Notice states the Contract number (483572), the Contract balance ($108,184.44), and the per diem "CHARGES ADDED PER DAY $15.21 FROM DATE DUE." The first paragraph of the Notice addresses the cancellation issue as follows:

> In accordance with the provisions of your Cal-Vet purchase contract, notice is hereby given **THAT YOUR CAL-VET CONTRACT WILL BE CANCELED FOR NONPAYMENT UNLESS THE TOTAL AMOUNT OF $55,689.41**, and any other associated costs are paid in full on or before thirty *(30) days from the date shown as Date Due above*, in addition to any installment which may become due during the thirty (30) day period. (Bold type original, italics added).

The Notice also bears a date, July 24, 2003, which precedes the actual mailing of the Notice by five days. The date stands alone in the upper right quadrant of the document, opposite Calvillo's address in the place where dates are typically located on business correspondence. The physical location of the date, and its relationship to the other information in the Notice is depicted in the following image of the actual Notice:



STATE OF CALIFORNIA                                                                    GRAY DAVIS, Governor
DEPARTMENT OF VETERANS AFFAIRS
Division of Farm and Home Purchases
Foreclosure Unit
P.O. Box 942895
Sacramento, CA  94295-0001
(800) 952-5626
FAX: (916) 653-2333

                                                                                        July 24, 2003
Manuel Calvillo
5526 East Illinois Avenue
Fresno, CA  93727

### NOTICE OF INTENT TO CANCEL CONTRACT

CONTRACT              CONTRACT                                CHARGES ADDED PER DAY $15.21
NUMBER: 483572        BALANCE: $108,164.44                    FROM DATE DUE

In accordance with the provisions of your Cal-Vet purchase contract, notice is hereby given THAT YOUR CAL-VET CONTRACT WILL BE CANCELED FOR NONPAYMENT UNLESS THE TOTAL AMOUNT OF $$5,939.41, and any other associated costs* are paid in full on or before thirty (30) days from the date shown as Date Due above, in addition to any installment which may become due during the thirty (30) day period.

CANCELLATION OF YOUR CONTRACT TERMINATES YOUR INTEREST IN THE PROPERTY. Untimely payments or tender, or payments or tender of less than the amount due will not revoke or extend this Notice of Intent to Cancel Contract. Acceptance of less than the amount due shall not constitute a waiver by the department of its right to cancel the contract, nor any other remedy, all of which are expressly reserved. If you are a participant in the Life and Disability programs, and your account has been delinquent more than 60 days, your Life and Disability coverage may be terminated.

Payments received after the tenth of the month are subject to a late charge.

It is your responsibility to contact this office at the phone number or address provided above.

NOTE:    ONLY A CASHIERS CHECK, CERTIFIED CHECK OR MONEY ORDER
         WILL BE ACCEPTED IN FULL PAYMENT OF YOUR DELINQUENCY.

* In accordance with the terms of your Cal-Vet purchase contract, other associated costs not limited to charges for title reports and legal fees may be added to the Amount Due.

                                                                FORECLOSURE UNIT

The United States Post Office made two attempts to deliver the Notice on July 31 and August 5, 2003. Calvillo failed to accept or sign a receipt for the Notice and the Notice was returned to the Department as "unclaimed" on August 15, 2003. Notwithstanding the 30-day time period prescribed in the Notice, the Department contends that it did not actually cancel the Contract until October 20, 2003.

On November 24, 2003, the Debtors filed a chapter 13 bankruptcy petition and listed the Department as a creditor. They scheduled the Residence as property of the chapter 13 estate. On January 28, 2004, the court confirmed the Debtors' chapter 13 plan without objection from the Department. The Debtors are obligated to pay $2,000 per month to the chapter 13 trustee, M. Nelson Enmark, Esq. ("Trustee") for a period of 54 months (the "Plan"). The Plan provides for cure of the prepetition arrearage on the Contract and maintenance of the postpetition Contract payments through the Trustee. As of the hearing on this motion, the Debtors were current with all payments under the Plan. However, the Department has refused to accept any money from the Trustee on account of the Contract. The Department contends that the Contract was cancelled prepetition, that the estate has no interest in the Residence, and that Calvillo no longer has the right, or the obligation, to cure the default and maintain payments under the Contract. The Department did not file a proof of claim in this case.

**Issue Presented**

The ultimate issue before this court is whether the Department effectively cancelled the Contract. If the Contract was cancelled, then the bankruptcy estate has no interest in the Residence and the Department is entitled to have the Debtors evicted from the Residence. Pursuant to paragraph 17 of the Contract, the Department's right to cancel the Contract was conditioned on the Department (1) fixing a day upon which it would cancel the Contract if the default was not cured, (2) giving written notice to Calvillo of its intention to do so, and (3) mailing the notice at least 30 days before the date fixed for cancellation. The immediate issue therefore is whether the Department did what it was

1 required to do to cancel the Contract.[2]

2 **Summary Judgment Standard**

3 Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (made applicable in this adversary proceeding by Fed. R. Bankr. P. 7056). A material fact is one that might affect the outcome of the suit under the governing law and irrelevant or unnecessary factual disputes will not be considered in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The moving party bears the burden of showing that there is no genuine dispute as to each as to each issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). However, the party adverse to a motion for summary judgment cannot simply deny the pleadings of the moving party; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). More precisely, "[i]t is not enough that the nonmoving party point to disputed facts; rather, they must make a sufficient showing to establish the existence of a triable issue of material fact as to an element essential to the moving party's case." *In re Powerburst Corporation*, 154 B.R. 307, 309-10 (Bankr. E.D. Cal. 1993) citing *Lake Nacimiento Ranch v. San Luis Obispo County*, 830 F.2d 977, 979-80 (9th Cir. 1987), cert. denied 488 U.S. 827 (1988).

The court may, *sua sponte*, grant summary judgment in favor of a nonmoving party as long as the moving party was provided a "full and fair opportunity to ventilate

---

[2] The fact that Calvillo failed to accept the Notice from the Post Office is irrelevant. Paragraph 17 of the Contract provides that "such notice shall be deemed duly given when mailed in any United States Post Office by certified mail, postage prepaid, and addressed to Purchaser at the address of the property under this Contract." Calvillo does not dispute that the Notice was properly mailed. Calvillo is therefore deemed to have received the Notice when it was mailed.

6

the issues in the motion." *United States v. Real Property Located at 25445 via Dona Christa, Valencia, California*, 138 F.3d 403, 407, n.4 (9th Cir. 1998) citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982).

**Analysis and Conclusions of Law**

The nature and extent of Calvillo's interest in the Residence must be determined under state law. *Hanf v. Summers (In re Summers)*, 332 F.3d 1240, 1242 (9th Cir. 2003) (citation omitted).

California enacted the "Veterans' Farm and Home Purchase Act of 1974" (the "Act") to provide veterans with the opportunity to acquire farms and homes. Cal. Mil. & Vet. Code § 987.51.[3] Under the Act, the Department is empowered to purchase available farms and homes and sell the properties back to eligible veterans under long-term installment contracts at a low rate of interest. §§ 987.60, 987.69. The selling price to the veteran is generally the price that the Department paid to acquire the property. § 987.69. The Department's acquisitions are funded through general obligation bonds. *See* § 998.303. The veteran-buyer must make an initial down payment of at least 2 percent of the purchase price. § 987.71(a). The balance of the purchase price may be amortized and paid through installments over a period fixed by the Department not exceeding forty years. § 987.71(b). The Department retains legal title to the subject property until the installment contract is paid in full. *Department of Veterans Affairs v. Duerksen*, 138 Cal. App. 3d 149, 151 (Cal. Ct. App. 1982).

The legislature has vested the Department with the sole authority to administer the Act. § 987.54. With some limitations, the Department has the authority, in each individual case, to specify the terms of the Cal-Vet Loan contract entered into with the buyer. § 987.73(a).

The Act provides the Department with remedies for enforcement of Cal-Vet Loan

---

[3]All references to "Section" in this discussion are to the California Military and Veterans Code unless otherwise indicated.

1  contracts that are not available under California law in traditional real property mortgage
2  transactions. At the heart of the Act is the Department's ability to cancel a Cal-Vet Loan
3  contract upon the giving of notice if a veteran fails to comply with the terms of his/her
4  contract. Section 987.77 of the Act is consistent with paragraph 16 of Calvillo's Contract
5  regarding the Department's right to cancel the Contract. It provides in pertinent part:

> In the event of a failure of a purchaser to comply with any of the terms of his contract of purchase, the department may cancel such contract, and thereupon be released from all obligations, at law or in equity, to convey the property, and the purchaser shall forfeit all right thereto. All payments theretofore made shall be deemed to be rental paid for occupancy. Upon such forfeiture, the department shall take possession of the property covered by such contract, . . . .

10  The penalty for failing to perform a Cal-Vet Loan contract - forfeiture of the
11  buyer's equity in the property - is substantial. It is well settled, however, that this
12  forfeiture remedy is valid. *See Duerksen*, 138 Cal. App. 3d at 157-58. Section 987.77
13  addresses the needs of both the public and veterans under the Cal-Vet Loan program, and
14  it prevails over the general scheme for real property foreclosures set forth in the
15  California Civil Code. *Id.* The forfeiture power is vital to the Cal-Vet Loan program as it
16  encourages veterans to comply with the terms of their contracts, and when they do not, it
17  gives the Department quick access to the property to favor the next veteran with its use.
18  *Id.*

19  Based on the foregoing, it is clear that the Department had the authority to cancel
20  Calvillo's Contract when he failed to cure the default prior to commencement of the
21  bankruptcy. The question, therefore, is whether the Department did effectively cancel the
22  Contract. Forfeiture of the Residence is such a drastic remedy, this court will strictly
23  scrutinize the terms of the Contract and the Department's compliance with the Contract
24  before it will compel such a result.

25  Calvillo's Contract was entered into in 1985. Prior to 1988, it was not clear how
26  the Department should actually cancel a Cal-Vet Loan. In 1988, the Department
27  promulgated Title 12, section 344.1 of the California Code of Regulations (Regulation
28

344.1), which defines the "notice" procedure for cancelling a Cal-Vet Loan contract.[4] Regulation 344.1 provides:

> Before cancelling a contract, the Department will give 30 days' written notice of its intent to cancel to the contract holder and to any junior lienholders for whom it has given its written consent to encumber. The notice shall be given by certified or registered mail, return-receipt requested, or by first-class mail, or by personal service, as deemed appropriate by the Department, to or at the last known address of contract holder or junior lienholder as shown in the Department's contract file. The contract holder and all junior lienholders are responsible for keeping the Department informed by actual written notice to the Department of the proper address to which notices are to be sent. The notice shall be effective upon mailing, or upon actual service if given by personal service, and the default must be cured within 30 days thereafter to avoid cancellation.

The dispute here evolves from a conflict between the language in Regulation 344.1 and paragraph 17 of the Contract. The Regulation implements the Department's cancellation/forfeiture power; it provides for cancellation of a Cal-Vet Loan 30 days after proper mailing of a notice of its intent to do so. Calvillo's Contract in turn requires the Department to first *fix a date* for cancellation and then give at least 30-days' notice *of that date* "[b]efore exercising the right to cancel this Contract."

The Department decided to move forward with cancellation of Calvillo's Contract in July 2003. In the Notice, the Department informed Calvillo that it intended to cancel the Contract unless a balance of $55,689.41 was "paid in full on or before thirty (30) days from the *date shown as Date Due above* . . . ." (Emphasis added). It appears that the Department attempted to comply with paragraph 17 of the Contract which requires the Department to *"fix a day upon which it will cancel"* the Contract. Unfortunately for the Department, the Notice does not bear a "Date Due" and the Department offered no evidence to show that it actually "fixed a due date" before exercising the right to cancel the Contract.

The Department argues that the date on the Notice, July 24, 2003, should be deemed as the due date. However, the Department's argument is unpersuasive. The term

---

[4]The court did not find a similar regulation that preceded Regulation 344.1.

9

"Date Due" is capitalized in the first paragraph of the Notice, as if to define or refer to a specific date located somewhere else in the document. The "Date Due" had to fall at least 30 days after the Notice was mailed. It is clear from the above image of the actual Notice that the date in the upper right-hand corner is nothing more than the date that the Department issued the Notice. It precedes the mailing of the Notice by five days and it bears no apparent relationship to anything else in the Notice. There is simply no "Date Due," as contemplated in both paragraph 17 of the Contract and in the Notice itself, anywhere in the Notice. The court therefore finds and concludes that the Department failed to fix a date for cancellation of the Contract and failed to give Calvillo proper notice of its intention to do so in compliance with the express terms for cancellation of the Contract.

The Department also argues that it was not required to "fix a date" on which it would cancel the Contract. The Department relies on Regulation 344.1, which appears to provide that cancellation will occur automatically thirty (30) days after mailing the Notice. The Department contends that Regulation 344.1 trumps paragraph 17 of the Contract. The court is not persuaded by the Department's argument for three reasons.

First, Regulation 344.1 became operative on May 4, 1988. The Department and Calvillo entered into the Contract on June 24, 1985, almost three years before the Regulation became effective. The Department offers no authority to suggest that the Regulation applied retroactively to modify existing Contracts. Second, under section 987.73, the Department "in each individual case may specify the terms of the contract entered into with the purchaser." In this case, the Department did what it was empowered to do in section 987.73 - it specified in paragraph 17 of the Contract the terms and procedure for cancellation of the Contract. Third, the "before exercising" language in paragraph 17 suggests that the "fix a day/30-day notice" provision is a condition precedent to the Department's right to cancel the Contract, whether Regulation 344.1 is applicable or not. It is undisputed that the Department did not do what it covenanted to do before it could cancel the Contract.

**Conclusion**

Based on the foregoing, the court finds and concludes that the Department failed to cancel Calvillo's Cal-Vet Loan Contract as contemplated by the terms of the Contract itself. Therefore, Calvillo still has an equitable interest in the Residence. Pursuant to 11 U.S.C. §§ 1322(b)(3) & (5) and 1327(a), Calvillo's chapter 13 plan is binding on the Department in so far as it provides for "the curing or waiving of any default" in the Contract and "maintenance of payments while the case is pending." Calvillo's performance of the chapter 13 Plan, and the Trustee's tender of Plan payments to the Department, extinguishes Calvillo's obligation to make those payments as they come due under the Contract, whether the Department accepts the payments or not. *See* California Civil Code § 1485. If Calvillo should default under the Plan, or if this case is converted to chapter 7, the Department has a right to seek further relief, including relief from the automatic stay, and thereafter cancel the Contract in compliance with its terms and applicable non-bankruptcy law.

The Department's motion for summary judgment will be denied. The court grants summary judgment, *sua sponte*, in favor of Calvillo as the Department was provided a "full and fair opportunity to ventilate the issues in the motion." *United States v. Real Property Located at 25445 via Dona Christa, Valencia, California*, 138 F.3d 403, 407, n.4 (9th Cir. 1998) citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982).

Dated: May 26, 2005

W. Richard Lee
United States Bankruptcy Judge

11

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| Manuel & Kandy Calvillo<br>5826 E Illinois<br>Fresno, CA 93727 | Peter B. Bunting<br>2501 W Shaw Ave #119<br>Fresno, CA 93711 | California Department Of<br>Veteran Affairs<br>c/o Karla Broussard-Boyd<br>1227 O Street #306<br>Sacramento, CA 95814 |
| Karla Broussard-Boyd<br>1227 O St #306<br>Sacramento, CA 95814 | U. S. Trustee<br>1130 O St #1110<br>Fresno CA 93721 | M. Nelson Enmark<br>3447 W Shaw Ave<br>Fresno, CA 93711-3204 |

DATED: 5-26-05          By: _Barbara Moradian_
                              Deputy Clerk

EDC 3-070 (New 4/21/00)